44251. BANK OF DADE v. REEVES et al.
(354 SE2d 131)

GREGORY, Justice.

Alvin and Evelyn Reeves filed suit seeking to enjoin the Bank of Dade from exercising the power of sale in its security deed on their home. The superior court granted an injunction. We reverse.

The Reeves jointly own their home. Mr. Reeves also owned business assets as sole proprietor of a construction company. Over several years, Reeves borrowed money from the Bank of Dade, secured by his business assets and the Reeves' home.

In early 1982, bank president Edward Wilkie contacted Reeves. He told Reeves he was behind in his payments and suggested arrangements needed to be made to bring the payments up to date.

Reeves decided he would sell his business assets, pay off his debts and retire. He asked Sam Swope, a heavy equipment dealer, to appraise the value of his business assets. Swope gave a total high appraisal value of $231,499, and a low total appraisal value of $155,400. At that time Reeves' debt to all his creditors, including the bank, was approximately $122,687.

On November 17, 1982 Reeves and Swope entered into a written agreement in which Reeves appointed Swope as "trustee" over his equipment with power to sell his business assets, with the proceeds to be used to retire Reeves' debts. Swope was to pay $6,000 at the outset to the bank.

On the same day, Swope and Reeves went to the Bank of Dade to obtain the bank's acquiescence in their agreement and to arrange for the bank to release its liens on the assets to facilitate the sales. Bank president Wilkie drew up a second document, which acknowledged the previous agreement between Swope and Reeves. This document gave Swope discretionary authority to sell the assets using his best judgment. Swope again agreed to pay the Bank of Dade $6,000 to be applied toward Reeves' debt before any action was taken. Net pro-

ceeds of the sales were to be applied toward the debt.

The document, which was signed by Wilkie, Swope and Reeves, also included the following provisions:

"3. To discuss with management of the Bank of Dade, prior to sale, the subject of whether or not to sell any item to which reference is made on the attached list, which is encumbered to Bank of Dade, for a price less than eighty per cent of the Specified Low Figure [on attached appraisal sheet].

"4. To consult at least once monthly the Management of the Bank of Dade relative to progress being made in the sale of said property."

Swope gave the bank a check for $6,000 dated November 18, 1982. On December 13, 1982, Swope made a status report on the progress of the sales, and promised to make another report around January 15, 1983. However, the December report proved to be the last until all the assets were sold.

Between December and July 1983, Swope made several individual sales of assets. In July 1983, the remainder of the equipment was sold, and the net proceeds went to the Bank of Dade.

The total amount realized from the sale of Reeves' business assets amounted to approximately $75,000, which was 48 percent of Swope's low appraised value.

In 1985, the bank began proceedings to exercise its power of sale in the security deed to the Reeves' home. The Reeves filed this action seeking to enjoin the sale.

1. Our analysis of the transaction is that Reeves, Swope and the bank entered into a contract which was wholly executory. It contained promises either expressed or implied made by each to the others. The promises exchanged constituted the consideration to support the contract. The bank promised to release its liens in exchange for Swope's promise to pay $6,000 toward Reeves' debt. Swope promised to sell the property and remit the net proceeds to Reeves and the bank for application against Reeves' debt; to discuss with the bank any proposed sale at less than 80 percent of the minimum appraised value; and, to report progress to the bank at least monthly. Reeves promised Swope a commission on sales and promised the bank net proceeds of sales would be applied against his debt.

The trial court also found an implied promise by the bank to Reeves to monitor the sales and veto any inadequate sales. We do not reach the issue whether the contract did impose the implied duty found by the trial court because we hold that even if the promise was made and breached it gave rise at most to an action for breach of contract. Its breach affords no grounds for injunctive relief against the foreclosure of the home.

2. The trial court enjoined the sale and ordered the bank to de-

liver the security deed to the Reeves for cancellation. The court based its actions on four alternative theories, including constructive trust and promissory estoppel.

In imposing a constructive trust on the residential property in favor of the Reeves the trial court found there was a confidential relationship between the bank and the Reeves and the bank's action, considering the relationship, amounted to innocent or constructive fraud. In our view there is no evidence in the record to support this finding. At most, there was a breach of contract by the bank.

3. The trial court's second theory was based upon promissory estoppel. Again, we find no promissory estoppel, but simply the possibility of a breach of contract. The principle of promissory estoppel relates to the sufficiency of consideration to enforce a promise; it "merely provides that, in certain circumstances, the reliance by the promissee or third party upon the promise of another is sufficient consideration, in and of itself, to render the executory promise enforceable against the promissor." *Loy's Office Supplies v. Steelcase, Inc.*, 174 Ga. App. 701, 702 (331 SE2d 75) (1985). "Ordinarily the key difference between a promise supported by consideration and a promise supported by a promissory estoppel is that in the former case the detriment is bargained for in exchange for the promise; in the latter, there is no bargain. The detriment is a consequence of the promise but does not induce the making of the promise." Calamari and Perillo, Contracts, § 99, p. 172 (1970). These parties entered into a contract the consideration of which was a mutual exchange of promises. The promises exchanged were bargained for. Promissory estoppel is not present.

4. The trial court fashioned two alternate remedies based on analogies between the facts of the instant case and circumstances which would be governed by the Commercial Code. OCGA § 11-9-501 et seq. We decline to extend the Commercial Code beyond situations for which it was enacted and find these remedies therefore inappropriate.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 8, 1987 —
RECONSIDERATION DENIED APRIL 22, 1987.

*Watson & Dana, Joseph F. Dana,* for appellant.
*Herbert E. Franklin, Jr.,* for appellees.