A98A1364. SAGE TECHNOLOGY, INC. v. NATIONSBANK N.A. SOUTH.

(509 SE2d 694)

McMurray, Presiding Judge.

On July 8, 1996, NationsBank N.A. South ("NationsBank") contracted to sell Sage Technology, Inc. ("Sage") two parcels of realty for $1.8 million. The parties' sales contract ("the Agreement") called for the deal to close on or before August 1, 1996, "unless the parties mutually agree in writing upon another place, time, or date." Paragraph 3.1 of the Agreement required Sage to make a $50,000 earnest money deposit with an escrow agent, which supplemented Sage's earlier $50,000 earnest money deposit, no "later than 4:00 p.m. on July 8, 1996, [and provided NationsBank with] the option of terminating [the] Agreement if the Earnest Money [was] not delivered to the Escrow Agent within such time." Paragraph 4.1 (b) of the Agreement gave Sage until July 12, 1996, to make objections to the realty's title and provided NationsBank with "the right (without any obligation to do so) to cure or attempt to cure . . ." any of Sage's title exceptions.

Sage made the $100,000 earnest money deposit in timely fashion and, in a letter dated July 12, 1996, listed 15 exceptions to the realty's title — including the charge that "[r]ecord title does not vest in [NationsBank] as to either Tract I or Tract II of the subject property." NationsBank addressed each of these exceptions in a letter dated July 22, 1996, and informed Sage that it would endeavor to have the realty's title transferred on or before closing according to the Agreement's requirement that NationsBank provide Sage with title to the realty via a "Limited Warranty Deed."

On July 29, 1996, Sage executed an amendment to the Agreement which deferred the closing until September 9, 1996, and

required Sage to make an additional $25,000 earnest money deposit "on or before 4:00 p.m. on Wednesday July 31, 1996. . . ." Sage, however, did not make this deposit because (according to Sage's corporate attorney) Sage discovered, after executing this amendment, that NationsBank had received and recorded an invalid deed to the realty from a subsidiary corporation of NationsBank's corporate predecessor. NationsBank terminated the deal after Sage failed to make the additional earnest money deposit on July 31, 1996, and claimed Sage's earlier $100,000 earnest money deposit under the Agreement's default provision — Paragraph 8.2. This paragraph provides, "If [Sage] breaches this agreement, [NationsBank], as [its] sole remedy and relief hereunder, may terminate this Agreement and thereupon receive the Earnest Money as liquidated damages. . . ."

Sage sued NationsBank, alleging that the July 29, 1996 amendment was a unilateral promise which it rejected (by not depositing more earnest money) and that NationsBank breached the Agreement by not closing the deal on the August 1, 1996 closing date. Sage also alleged that NationsBank acted in bad faith, in breach of a fiduciary duty, during the transaction because NationsBank did not own the realty when it executed the Agreement, NationsBank misrepresented its ability to acquire good title to the realty and NationsBank was aware that it could not produce a "Limited Warranty Deed" to the realty by the time of closing on August 1, 1996. Sage alleged that NationsBank fraudulently induced the July 29, 1996 amendment by concealing its inability to deliver good title to the realty and that Sage first learned about this treachery on July 30 and 31, 1996, when its attorney discovered that NationsBank had recorded a defective deed during the Agreement's executory period which purported to, but did not, convey NationsBank title to the realty.

NationsBank denied liability and filed a motion for summary judgment. This appeal followed entry of the trial court's order granting NationsBank's motion for summary judgment. *Held*:

1. Sage first contends the trial court erred in granting NationsBank's motion for summary judgment based on the liquidated damages clause in Paragraph 8.2 of the Agreement because Paragraph 4.3 of the Agreement provides for return of the earnest money to Sage upon termination of the transaction.[1] "However, this argument appears not to have been raised in the trial court and may not be considered for the first time on appeal. *Noro-North Plaza &c. v. Rare Coins of Ga.*, 196 Ga. App. 443 (1) (395 SE2d 918) (1990)." *Minor v.*

---

[1] Paragraph 4.3 pertinently provides: "If this Agreement is terminated pursuant to the right of either party to terminate this Agreement, the Earnest Money will be promptly refunded to [Sage] and neither party shall have any further obligations under this Agreement. . . ."

*E. F. Hutton & Co.*, 200 Ga. App. 645, 646 (1) (409 SE2d 262). But assuming Sage had preserved this issue for appellate review, we find no contractual ambiguity between Paragraphs 8.2 and 4.3 of the Agreement which defeats Paragraph 8.2's liquidated damages provision.

Paragraph 4.3 is in a section of the Agreement entitled, *"CONDITIONS TO CLOSING."* This Section gives the parties options for terminating the deal for reasons other than default during the Agreement's executory period — such as Sage's right to terminate during a specified period upon discovery of an unacceptable fact or condition affecting or existing on the realty. Paragraph 8.3, on the other hand, is in a section entitled, *"DEFAULT,"* which deals only with the parties' respective remedies in case of default. These circumstances demonstrate that Paragraphs 8.2 and 4.3 are not conflicting. That is, while Paragraph 4.3 directs disposition of the earnest money in case of termination by either party as a matter of right, Paragraph 8.2 directs disposition of the earnest money in case of termination by reason of default. " '[A] contract should be construed by examining the agreement in its entirety, and not merely by examining isolated clauses and provisions thereof. (Cits.)' *Duffett v. E & W Prop.*, 208 Ga. App. 484, 486 (2) (430 SE2d 858)." *Richard Haney Ford, Inc. v. Ford Dealer Computer Svcs.*, 218 Ga. App. 315, 316 (1) (b) (461 SE2d 282).

We reject Sage's assertion that its earnest money deposit should be returned because the July 29, 1996 amendment made no provision for disposition of this money. The July 29, 1996 amendment modified the Agreement's closing date, not the Agreement's provisions regarding disposition of the earnest money in the event of default.

2. We also reject Sage's contention that the July 29, 1996 amendment was an unenforceable unilateral promise which was not supported by consideration. The July 29, 1996 amendment embraces NationsBank's agreement to delay the closing until September 9, 1996, as well as Sage's agreement to pay additional earnest money in exchange for this postponement. Such a mutual exchange of promises constitutes adequate consideration for a contract. *Bank of Dade v. Reeves*, 257 Ga. 51, 53 (3) (354 SE2d 131). The trial court properly rejected Sage's arguments that "the dealings of the parties" should be admitted to explain the purpose of the July 29, 1996 amendment. Such parol evidence is inadmissible to vary the unambiguous terms of the July 29, 1996 amendment. *Craig v. C & S Nat. Bank*, 142 Ga. App. 474 (1), 475 (236 SE2d 166).

3. Sage asserts in its second enumeration of error that genuine issues of material fact remain as to whether "Nationsbank breached the Agreement by wrongfully terminating [the] Agreement." This assertion is without merit. No matter what NationsBank did or did not do during the Agreement's executory period, NationsBank's ulti-

mate obligation under the Agreement was to convey the realty at closing via a "Limited Warranty Deed." It is undisputed that Nations-Bank did not fulfill this obligation because Sage breached the Agreement before the closing by failing to deposit additional earnest money as required by the July 29, 1996 amendment.[2] Under such circumstances, we agree that NationsBank was authorized in terminating the Agreement based on Sage's breach of contract. Consequently, the trial court did not err in granting NationsBank's summary judgment as to Sage's breach of contract claim.

4. Sage claims in two enumerations of error that genuine issues of material fact remain as to its bad faith and fraudulent inducement claims. We do not agree.

It is undisputed that Sage (as evidenced by its July 12, 1996 title exceptions letter) knew that NationsBank did not have title to the realty before executing the July 29, 1996 amendment. It is also undisputed that Sage knew or should have known, when it agreed to amend the Agreement on July 29, 1996, that NationsBank had no obligation under the Agreement to cure the realty's title defects. Sage was, therefore, not justified in failing to comply with the July 29, 1996 amendment based on its alleged discovery that NationsBank did not have good title to the property or that NationsBank was concealing its inability to deliver good title to the realty at closing. "[O]ne cannot claim to be defrauded about a matter equally open to the observation of all parties, absent the existence of a special relationship or trust or confidence. [*Conerly v. First Nat. Bank of Baldwin County*, 209 Ga. App. 601, 603 (2) (434 SE2d 143)]. See *Campbell v. C & S Nat. Bank*, 202 Ga. App. 639, 640 (1) (415 SE2d 193) (1992) (express written terms in note will defeat defense of fraud in the procurement of a note based on purported oral misrepresentations by bank officer)." *Fuller v. Greenville Banking Co.*, 230 Ga. App. 63, 64 (1) (495 SE2d 320). Since Sage points to no proof indicating that it had a special relationship of trust or confidence with NationsBank, the trial court did not err in granting NationsBank's motion for summary judgment as to Sage's bad faith and fraudulent inducement claims.

We have considered all of Sage's assertions and find them to be without merit.

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

---

[2] Sage argues that this deadline was not enforceable because the July 29, 1996 amendment did not have a "time is of the essence" clause. While the July 29, 1996 amendment did not include such a clause, the Agreement did include a "time is of the essence" clause. Thus, since there is no indication that NationsBank waived this provision upon agreeing to extend the deal's closing date, time remained of the essence during the transaction and Sage was bound by its promise to deposit additional earnest money by July 31, 1996. See *McCullough v. McCullough*, 263 Ga. 794, 795 (1) (439 SE2d 486).

*Sabiston & Smith, Eric P. Sabiston,* for appellant.
*Alston & Bird, Lonnie T. Brown, Jr., Staci B. Abrams,* for appellee.