**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 11, 2014**

# In the Court of Appeals of Georgia

A14A0701. FIRST BANK OF GEORGIA v. ROBERTSON
 GRADING, INC.

DILLARD, Judge.

Following a trial by jury, Robertson Grading was awarded $448,600.65 in damages and $149,500.00 in attorney fees against First Bank of Georgia ("the Bank") on the company's claims for promissory estoppel, unjust enrichment, and negligent misrepresentation related to paving work the company completed in a subdivision that the Bank ultimately foreclosed upon.[1] On appeal, the Bank contends that the trial court erred in, *inter alia*, failing to grant its motion for directed verdict as to each theory of recovery. Because we agree with the Bank that the trial court erred in denying its motion for directed verdict, we reverse.

---

[1] The jury found in the Bank's favor on Robertson Grading's claim of fraud.

Viewed in the light most favorable to the verdict,[2] the record reflects that in July 2007, Robertson Grading contracted with R & B Construction ("R & B"), a non-party to this action, to pave a subdivision R & B was developing in the Augusta area. Robertson Grading quoted R & B an estimated cost of $318,487.50 to complete the project, plus another $32,850.00 to complete a Department of Transportation public right-of-way/deceleration lane. Before starting work, but *after* agreeing to perform work for R & B, Robertson Grading requested a list of credit references, which R & B provided in late July 2007 and which included the Bank (listing Hugh Hollar as the Bank's representative). Lewis Robertson ("Robertson"), the owner of Robertson Grading, testified that he requested the list of references "to be able to determine [R & B's] credit worthiness" and that he "wanted a bank reference to find out who was funding the job."

Robertson testified that he visited Hollar at the Bank at the beginning of August 2007 and that he told Hollar "how much the paving was going to be and [he] wanted to be sure enough funds were available when we finished the paving to be able to get paid." Robertson told Hollar that the paving would cost "up to

---

[2] *See, e.g.*, *Turnage v. Kasper*, 307 Ga. App. 172, 178-79 (1) (704 SE2d 842) (2010).

$400,000.00," not including the cost to pave the public right-of-way. In response, Hollar did not give Robertson a specific dollar amount but indicated that there were sufficient funds remaining in the loan to pay for the paving and told Robertson that the company "would get paid for the paving."[3] According to Robertson, Hollar also said that he would notify Robertson if any problems arose with R & B's account.

Following that meeting, Robertson Grading started to pave the subdivision, doing the initial work of laying a base. And on August 28, 2007, Robertson Grading sent R & B an initial invoice for $123,963.75. However, R & B did not pay the invoice, leading Robertson to contact the R & B subdivision superintendent in early September to make further inquiry. According to Robertson, the superintendent informed him that the invoice had not been paid because the paving project was nearly finished and the Bank wished to wait until the paving was complete to write one check.

---

[3] Hollar testified at trial that he only assured Robertson that the loan had money allocated for paving, not that it contained a sufficient amount to cover the entire project, and that Robertson came to him for a rating on R & B, which he provided by explaining that the Bank had done business with the company, that R & B was in good standing, and that R & B was a large company with projects across the state. But viewing the evidence in the light most favorable to the jury's verdict, we accept Robertson's account of his conversation.

Doubting the validity of this explanation, Robertson then drove to the Bank to speak with Hollar. Robertson testified that Hollar confirmed that the Bank wished to issue one check at the completion of the paving work, and that he said either "when you get the last ton of asphalt down, send your invoice to R & B and I promise you we will get it paid" or "[w]hen you put the last ton of asphalt down and you get a bill into R & B Construction, I promise you[,] you will get paid."[4] And Robertson informed Hollar that he expected the paving work to be completed in two to three weeks.

Thereafter, Robertson Grading continued to pave the subdivision, the completion of which was greatly delayed from the estimate that Robertson gave to Hollar during the early-September visit, with the work instead being completed one or two days before November 7, 2007. Robertson testified that the completion date

[4] Robertson testified that payment on the August invoice was his "leverage" because if Robertson Grading did not get paid for laying the base, the company would "just stop paving." He further explained that he had "never done work with R & B and [he] just wanted to be sure that we got paid for that before we did the paving." As for Hollar, he testified that it was R & B who wished to issue one check at the completion of the paving project, not the Bank; that he informed Robertson that it was R & B's wish to do so; and that from the Bank's perspective, it would have been more beneficial to advance the money so that the Bank could begin receiving interest. But again, viewing the evidence in the light most favorable to the jury's verdict, we accept Robertson's account of his conversation.

4

was delayed because R & B initially indicated that the public right-of-way/deceleration lane would be prepared for Robertson Grading to just put down the rock-base and pave the area, but instead, R & B later asked Robertson Grading to "do the grading and shoulder" work as well. He also definitively testified that R & B requested the extra work, *not* the Bank; that he did not tell the Bank about the extra work; and that he dealt exclusively with R & B as to this work.

After the completion of the work, Robertson Grading sent an invoice to R & B dated November 7, 2007, billing R & B for $324,636.90, which did not include the $123,963.75 from the prior invoice. As to the price, Robertson testified that it was only at the very end of the project, just prior to sending the November invoice, that Robertson Grading realized the quantity of materials initially estimated to R & B had increased, resulting in an increase in the total price of the paving project. Additionally, the cost of the deceleration lane increased above the estimated cost, and again, Robertson testified that the deceleration lane "was additional work that was added onto [the project] that wasn't a part of the scope of our work."

Approximately one to two weeks later, the outstanding invoices remained unpaid and Robertson called the subdivision superintendent to make inquiry. After the superintendent indicated that he did not know why the invoices were unpaid,

5

Robertson called Hollar at the Bank. Hollar then told Robertson that because R & B had missed their last interest payment on the construction loan, the Bank was not disbursing any further funds on the account.

According to the Bank, R & B's interest payment was due October 10th with a built-in 10-day grace period for late payment, making the ultimate due date October 20th. But because October 20th fell on a weekend, the Bank did not learn of the missed payment until Monday, October 22nd. Thereafter, R & B assured the Bank that they were working to make payment as quickly as possible, and although the Bank initially had confidence that payment was forthcoming, eventually the Bank lowered the rating on R & B's loan in early November as interest grew each day.

As for Robertson Grading, the company filed a lien against the subject property, contending that R & B owed money for the completed paving work. However, R & B filed for bankruptcy and the bankruptcy court found that Robertson Grading's lien was invalid because it had not been properly perfected. The bankruptcy court did, however, determine that Robertson Grading had a valid claim against R & B and allowed it to seek collection of payment as an unsecured creditor in the case, which remained pending at the time of trial between Robertson Grading and the Bank.

Meanwhile, the Bank began foreclosure proceedings when it became clear that R & B would not make payment on the missed interest payment. Although the proceedings were temporarily interrupted when R & B filed for bankruptcy, the property was eventually released by the bankruptcy court in October 2008, and the Bank then foreclosed on that property in December 2008. And despite working with Robertson Grading to approve a loan and assist in its potential purchase of the subdivision through foreclosure, ultimately nothing came to fruition as a result of those discussions, and the Bank ended up being the sole bidder at the foreclosure sale. Eventually, the Bank sold all of the lots in the subdivision which, it was undisputed, would not have been possible without paved streets. And at trial, the Bank stipulated to the fact that it made over $1 million in profit from the sale of the property.

Robertson Grading filed suit against the Bank in August 2011, bringing claims for promissory estoppel, unjust enrichment, negligent misrepresentation, and fraud. And following trial, the jury found in the Bank's favor as to the claim for fraud but awarded Robertson Grading $448,600.65 in damages and $149,500.00 in attorney fees against the Bank via a general-verdict form that was used over the Bank's objections. This appeal by the Bank follows.

At the outset, we note that a trial court's denial of a motion for a directed verdict or judgment notwithstanding the verdict is "to be reviewed using the any evidence test, and the evidence is to be construed most favorably toward the party opposing the motion."[5] The question before this Court, then, is "not whether the verdict and judgment of the trial court were merely authorized, but whether a contrary judgment was demanded."[6] Thus, we must construe the evidence with every inference and presumption in favor of upholding the verdict, even when the evidence is in conflict.[7] And so long as there is some evidence to support the jury's verdict, "it must be upheld on appeal . . . because jurors are the sole and exclusive judges of the weight and credit given to evidence presented at trial."[8] With these guiding principles in mind, we will now address the Bank's enumerations of error as to each theory of recovery.

---

[5] *Turnage*, 307 Ga. App. at 178 (1).

[6] *Id.*

[7] *Id.* at 178-79 (1).

[8] *Id.* at 179 (1) (footnotes omitted).

1. *Promissory Estoppel*. In separate enumerations of error, the Bank contends that the trial court erred in denying its motion for directed verdict as to promissory estoppel when, *inter alia*, (1) the claim was barred by the statute of frauds and (2) Robertson Grading could not establish exclusive or reasonable reliance upon any statement made by the Bank. We agree that Robertson Grading failed to establish exclusive or reasonable reliance upon any statement by the Bank and, furthermore, that the Bank's failure to perform any alleged promise was caused by an independent occurrence for which the Bank was not at fault (*i.e.*, default on the loan by R & B).

At the outset, we note that a claim for promissory estoppel "allows enforcement of promises that would otherwise be defeated by the statute of frauds."[9] Thus, to the extent that Robertson Grading argued that the Bank promised to answer for the debt

---

[9] *Johnson v. Univ. Health Servs., Inc.*, 161 F3d 1334, 1340 (II) (C) (11th Cir. 1998); *see 20/20 Vision Ctr., Inc. v. Hudgens*, 256 Ga. 129, 135 & n.7 (7) (345 SE2d 330) (1986) (reversing dismissal of complaint and remanding for consideration of case under a theory of promissory estoppel, and noting that statute of frauds applied to the alleged promise at issue).

of R & B, the statute of frauds would apply to such a promise,[10] but Robertson

Grading would not be precluded from bringing a claim for promissory estoppel.[11]

Nevertheless, in responding to the Bank's arguments as to the application of

the statute of frauds to Robertson Grading's claim for promissory estoppel (and

negligent misrepresentation, discussed *infra*), Robertson Grading devotes much of its

appellate brief to argument regarding an alleged "original undertaking." But this

argument is a nonstarter because, among other reasons,[12] the record is entirely devoid

___

[10] *See* OCGA § 13-5-30 (2) ("To make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him: . . . [a] promise to answer for the debt, default, or miscarriage of another.").

[11] *See 20/20 Vision Ctr.*, 256 Ga. at 135 (7); *see also Ga. Invest. Int'l, Inc. v. Branch Banking & Trust Co.*, 305 Ga. App. 673, 676 n.3 (1) (700 SE2d 662) (2010) ("The Supreme Court has rejected the argument that the statute of frauds bars a promissory estoppel claim." (punctuation omitted)).

[12] This position is, of course, legally inconsistent with Robertson Grading's theory of recovery under promissory estoppel, which permits recovery even when a promise is unenforceable as a contract. *See Bank of Dade v. Reeves*, 257 Ga. 51, 53 (3) (354 SE2d 131) (1987) (holding that theory of promissory estoppel did not apply when there was instead "simply the possibility of a breach of contract" and noting that "the key difference between a promise supported by consideration and a promise supported by a promissory estoppel is that in the former case the detriment is bargained for in exchange for the promise; in the latter, there is no bargain"); *see also Brown v. Rader*, 299 Ga. App. 606, 611 (2) (a) (683 SE2d 16) (2009). An original undertaking "recognized by our law as legal and enforceable whether in writing or parol is an engagement on the part of the promisor to answer for credit extended to

10

of *any* evidence that R & B was released from the original contract so as to form an

original undertaking between Robertson Grading and the Bank.[13]

---

another." *Holcombe v. Parker*, 99 Ga. App. 616, 620 (109 SE2d 348) (1959). Put another way, an "original undertaking" amounts to a new contract, the breach of which would give rise to an action for breach of contract. *See White House, Inc. v. Winkler*, 202 Ga. App. 603, 606 (415 SE2d 185) (1992) ("[T]he statute of frauds does not apply to 'an original undertaking whereby a new promisor, for a valuable consideration between him and the promisee, substitutes himself as the party who is to perform, thus causing the original promisor to be released from the contract.'"); *see also Wooten v. Wilcox*, 87 Ga. 474, 476 (13 SE 595) (1891) ("[W]e are inclined to think that . . . *this contract is enforceable as an original undertaking* by the new firm, made on a valuable consideration moving to them, and entered into to serve their own interest as a leading object, and to protect property which had become theirs, subject to the plaintiff's lien, from being subjected to that lien at once." (emphasis supplied)); *Burgess v. Torrence*, 23 Ga. App. 193, 194 (98 SE 170) (1919) ("Even if it should appear that the plaintiff in the first instance rented the land to the husband, and subsequently entered into a new and different agreement with the wife, whereby she was to take over the land and become the tenant instead of the husband, such a procedure could not properly be called an assumption by the wife of the husband's obligation, but would be an *original undertaking* on her part; and unless it be shown that the *new contract* was brought about by fraud or duress practiced upon the wife by the plaintiff, or by another with his knowledge, there would be nothing to render such an agreement on her part invalid." (emphasis supplied)). *Cf. White House, Inc.*, 202 Ga. App. at 606-07 (holding that trial court properly granted summary judgment on breach-of-contract claim when appellant did not present "sufficient evidence to create an issue for recovery based upon an original undertaking"). And we note that Robertson Grading did not pursue a breach-of-contract claim against the Bank.

[13] In order for a promise to be considered an original undertaking, "the new promisor, for valuable consideration, must substitute himself as the party who is to perform, *and the original promisor must be released.*" *Litland v. Smith*, 247 Ga. App. 277, 278 (2) (543 SE2d 468) (2000) (emphasis supplied). Thus, whether a promise to assume the debt of another is an original undertaking or a collateral one is "a

11

Having disposed of Robertson Grading's argument as to original undertaking, we now consider whether there is any legally relevant evidence to support a recovery under a theory of promissory estoppel. To prevail on a claim of promissory estoppel, Robertson Grading was required to show that (1) the Bank made certain promises; (2) the Bank should have expected Robertson Grading to rely on those promises; (3) Robertson Grading did in fact rely on those promises to its detriment; and (4)

---

question of intent and whether the parties meant for the promisor to stand in the place of the third party." *B.J. Howard Corp. v. Skinner, Wilson & Strickland*, 172 Ga. App. 180, 181 (1) (322 SE2d 306) (1984) (punctuation omitted). And here, the record is entirely devoid of any evidence that R & B, the original promisor, was released from its obligation under the contract with Robertson Grading to pave the subdivision. *See Ross v. W. P. Stephens Lumber Co.*, 138 Ga. App. 748, 749-50 (227 SE2d 486) (1976) ("The evidence on this appeal will not support a finding that the original debtor . . . was released by the appellee, for suit was brought against it as a joint defendant to recover on the unpaid account; there was no substitution of [appellant] as the sole party to perform."); *see also Palmetto Mfg. Co. v. Parker & Anderson*, 123 Ga. 798, 798 (51 SE 714) (1905) ("[I]t must be shown that the person substituted as the debtor in the place of the person released became such as the result of an agreement in which all three concurred."). The record reflects that, with the exception of Lewis Robertson's two meetings with Hugh Hollar at the Bank, Robertson Grading continued to exclusively communicate with R & B, undertook extra paving work in the subdivision at R & B's behest, sent the two relevant invoices to R & B, made initial inquiry with R & B as to why the invoices were unpaid, and pursued remedies against R & B by way of an unperfected materialman's lien and, ultimately, as an unsecured creditor in R & B's bankruptcy case. Accordingly, there is no evidence that the Bank's statements to Robertson Grading amounted to an original undertaking.

12

injustice could be avoided only by enforcement of the promises.[14] And because promissory estoppel is an equitable doctrine,[15] the third requirement is one of *reasonable* reliance,[16] which means that "the plaintiff relied exclusively on such promise and not on his or her own preconceived intent or knowledge; that the plaintiff exercised due diligence, so as to justify such reliance as a matter of equity; and that there was nothing under the circumstances which would prevent the plaintiff from relying to his detriment."[17]

---

[14] *Sun-Pacific Enters., Inc. v. Girardot*, 251 Ga. App. 101, 103 (1) (553 SE2d 638) (2001); *accord Insilco Corp. v. First Nat. Bank of Dalton*, 248 Ga. 322, 322 (283 SE2d 262) (1981); *see also* OCGA § 13-3-44 (a) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.").

[15] *See DeKalb County School Dist. v. Gold*, 318 Ga. App. 633, 640 (1) (b) (734 SE2d 466) (2012) ("Promissory estoppel is an equitable doctrine."); *D.N. Garner Co. v. Ga. Palm Beach Aluminum Window Corp.*, 233 Ga. App. 252, 256 (2) (504 SE2d 70) (1998) (referencing "Georgia's equity doctrine of promissory estoppel").

[16] *Girardot*, 251 Ga. App. at 104 (1); *see also Ambrose v. Sheppard*, 241 Ga. App. 835, 837 (528 SE2d 282) (2000) ("[P]romissory estoppel requires only that the reliance by the injured party be reasonable." (emphasis and punctuation omitted)).

[17] *Simpson Consulting, Inc. v. Barclays Bank PLC*, 227 Ga. App. 648, 657 (5) (490 SE2d 184) (1997), *overruled on other grounds by Williams Gen. Corp. v. Stone*, 279 Ga. 428 (614 SE2d 758) (2005); *accord DPLM, Ltd. v. J.H. Harvey, Co.*, 241 GA. App. 219, 221-22 (1) (526 SE2d 409) (1999).

13

Here, based on Robertson's testimony at trial, Robertson Grading contends that it relied upon the Bank's statements that "the funds were available in [the Bank's] loan proceeds to pay for the paving" and that the company would be "paid when [it] finished the paving." Robertson Grading contends that its "decision to undertake the project was exclusively based on these assurances and promises." And Robertson Grading contends that the Bank knew or should have known at its first meeting that the funds left in the loan were inadequate to pay for the paving work. But Robertson Grading simply cannot establish a claim for promissory estoppel based on these statements because, as Robertson *himself* testified, the company had already contracted with R & B to pave the subdivision *before* meeting with the Bank as a credit reference.[18] Accordingly, Robertson Grading had already formed the intent to

[18] At trial, the following colloquy took place between the Bank's counsel and Robertson:

COUNSEL: I'm not sure what part [of your affidavit] is not correct. Let me read it to you and you tell me which part is not correct. ["]After July 27, 2007, but before Robertson Grading contracted with R & B to provide base and paving for the streets at Willhaven Subdivision, the deponent [Robertson] met personally with Hugh Hollar [the Bank's representative].["] Now, what part of that is not right?

14

enter into a contract to perform the paving work and, in fact, *had* entered into a contract to perform the paving work, which completely eviscerates any ability to establish reasonable, *exclusive* reliance upon any statements made by the Bank.[19]

Next, Robertson Grading argues that it also reasonably and exclusively relied upon the Bank's promise that, after the initial invoice was unpaid by R & B, Robertson Grading would be paid at the completion of the project if it submitted an invoice to R & B. Thus, according to Robertson Grading, it completed the paving

---

ROBERTSON: Well, we entered into an agreement for the contract in July, then in August, we started the contract. But we had already contracted—agreed to a contract in July. We didn't start the contract until August.

COUNSEL: So then what you're saying is that after you had agreed and contracted with R & B, then you went to see Mr. Hollar. Is that right?

ROBERTSON: That's right, after we had agreed on the contract . . . .

[19] *Cf. Reeves*, 257 Ga. at 52 (holding that when "parties entered into a contract the consideration of which was a mutual exchange of promises . . . [that] were bargained for," promissory estoppel "is not present"); *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 FSupp2d 1356, 1371 (III) (F) (N.D. Ga. 2006) ("Where parties enter into a contract with bargained for consideration, the terms of which include the promises alleged in support of a promissory estoppel claim, promissory estoppel is not available as a remedy.").

15

work in the subdivision because of this promise.[20] Robertson Grading contends that it was harmed by the representations made by the Bank at this second meeting because it continued working on the paving project until completion. Specifically, Robertson Grading (both at trial and on appeal) focuses exclusively upon the amount of money that remained in the loan at various points throughout Robertson's communications with Hugh Hollar (the Bank's representative), arguing that the loan never contained enough funds to fully cover the cost of the paving work. Additionally, Robertson Grading argues that, despite promising to inform it of any issues with R & B's account, the Bank failed to notify the company of the October 2007 default by R & B.[21]

---

[20] Robertson testified that the agreement with R & B did not provide for interim payments but that submitting "interim bills after a period of time" was standard practice in the industry.

[21] In what can only be characterized as a misrepresentation of the record (or perhaps an inability to provide accurate record citations), Robertson Grading claims that the Bank "admitted that it allowed Robertson to continue working after the R & B default and [the Bank] knew R & B was out of money," citing to pages in the trial transcript that in no way support this contention. Additionally, both on appeal and before the jury, Robertson Grading also argued that the Bank was aware that R & B was in technical default on the loan's terms prior to the missed October 2007 interest payment because a prior paving subcontractor had filed a lien against the property. The Bank denied having any actual knowledge of this lien, which was filed on July 25, 2007, until after R & B failed to make its scheduled interest payment in October 2007. And although Robertson Grading focuses on the fact that the lien states under

16

In addressing this aspect of Robertson Grading's argument, we begin by noting that it was undisputed between the parties that at the time this second conversation between Robertson Grading and the Bank occurred in early September 2007, Robertson Grading believed that the paving work would be completed in two to three weeks' time, putting the completion date somewhere toward the middle or end of September, and Robertson Grading made that representation to the Bank. Nevertheless, Robertson testified at trial that the project's completion was delayed by extra work the company took on to complete the public right-of-way/deceleration lane, all at R & B's request, pushing the ultimate completion date to one or two days before November 7, 2007. To sum up, then, Robertson Grading made two representations to the Bank in seeking the Bank's assurance that it would be paid for its work on the project: (1) that, "if everything went according to schedule," the work would be completed within to two to three weeks (*i.e.*, by the middle or end of

oath that the Bank was served with a copy by first class and certified mail on July 24, 2007, it is wholly undisputed that the lien does not contain the Bank's proper mailing address. Accordingly, no presumption arises that the lien was received. *See Bank South NA v. Grizzle*, 218 Ga. App. 462, 462 (1) (462 SE2d 170) (1995) ("[N]o presumption arises that a letter has been received in the mail unless it is shown that the letter (1) was written; (2) was properly addressed to the party; (3) contained the correct postage; and (4) was duly mailed in the United States Post Office."); *accord Crenshaw v. Ga. Underwriting Assn.*, 202 Ga. App. 610, 610 (1) (414 SE2d 915) (1992); *Shelton v. Rodgers*, 160 Ga. App. 910, 911 (288 SE2d 619) (1982).

September); and (2) that it would be performing paving work. But as it turns out, neither of these representations by Robertson Grading ended up being accurate, and Robertson admitted at trial that he did not have any additional meetings with the Bank or otherwise advise it about the work delay or agreement between Robertson Grading and R & B to expand the scope and expense of the work to include grading-and-shoulder work. Suffice it to say, Robertson Grading cannot claim that it reasonably relied upon an assurance of payment by the Bank when it unilaterally changed the very terms upon which that assurance was based.[22] Nor can Robertson Grading possibly argue that, given the foregoing, "injustice can be avoided only by enforcing the promise."[23]

---

[22] *See Fid. & Deposit Co. of Md. v. W. Point Const. Co.*, 178 Ga. App. 578, 580 (1) (344 SE2d 268) (1986) (noting that "[p]romissory estoppel cannot be applied unless the promisee reasonably relied on the promise," and holding, under facts of case, that "there could be no reasonable reliance on [alleged promise] because its enforceability is fraught with legal impediments"); *see also Gerdes v. Russell Rowe Commc'n, Inc.*, 232 Ga. App. 534, 536 (2) (502 SE2d 352) (holding that summary judgment was properly granted when appellant could not have reasonably relied upon alleged oral promise).

[23] *See, e.g.*, *Bedsole v. Action Outdoor Adver. JV, LLC*, 325 Ga. App. 194, 199 (2) (750 SE2d 445) (2013) ("The elements of the equitable doctrine of promissory estoppel are that the defendant made a promise upon which he reasonably should have expected the plaintiff to rely, the plaintiff relied on the promise to his detriment, and injustice can be avoided only by enforcing the promise because the plaintiff forwent a valuable right." (punctuation omitted)).

Furthermore, even if Robertson Grading were entitled to reasonably rely on the representations made by the Bank to Robertson during this second and last meeting, Robertson Grading's promissory-estoppel claim still fails. Indeed, while Robertson Grading focuses on the amount of loan money available for disbursement at various times, the evidence at trial established that the final invoice was unpaid *not* because of a lack of funds in the loan (even if the remaining loan funds would have been insufficient to cover the total cost) but as a direct result of R & B defaulting on its payments to the Bank, which was an independent, unforeseen occurrence.[24] And to the extent that Robertson Grading claims that it expected the Bank to disburse payments even if R & B defaulted, reliance on such a promise would be wholly unreasonable, as Robertson himself testified that he expected payment to be made by R & B from funds the Bank provided to R & B, that he wished to know if any problems arose with the loan, and that he understood that defaulting on the loan would entitle the Bank to stop advancing money.[25]

---

[24] *See Doll v. Grand Union Co.*, 925 F2d 1363, 1373 (II) (B) (11th Cir. 1991) (holding that appellee's "decision to pull out of the negotiations was due not to bad faith, but to the occurrence of an independent event, unforeseen by either party, which destroyed one of the essential elements of the negotiation").

[25] *See AgriCommodities, Inc. v. J.D. Heiskell & Co.*, 297 Ga. App. 210, 216 (2) (676 SE2d 847) (2009) (finding that, based upon appellant's own admitted

19

Finally, although Robertson Grading argues that the Bank failed to notify it of R & B's default, the statement upon which this alleged promise was based—*i.e.*, the statement that the Bank would notify Robertson if "any problems arose" —is simply too vague and indefinite to be enforceable by promissory estoppel.[26] Additionally, the evidence established that the completion of the project was greatly delayed by extra work that Robertson Grading undertook upon the deceleration lane at R & B's request without any notification to the Bank, delaying the anticipated completion date by a month to one or two days before November 7, 2007; that, due to the timing of the missed payment and a built-in 10-day grace period, the Bank did not learn of R & B's missed payment until October 22, 2007; that R & B assured the Bank that payment was forthcoming; and that when payment was not made, the Bank reevaluated and reclassified R & B's loan, downgrading its rating, all at some point *after* submission

knowledge of how industry operated, reliance on alleged promise was unreasonable) (physical precedent only).

[26] *See Griffin v. State Bank of Cochran*, 312 Ga. App. 87, 96 (2) (a) (718 SE2d 35) (2011) ("Promissory estoppel does not, however, apply to vague or indefinite promises, or promises of uncertain duration." (punctuation omitted)); *accord Lovell v. Ga. Trust. Bank*, 318 Ga. App. 860, 865 (3) (734 SE2d 847) (2012); *see also Mariner Healthcare, Inc. v. Foster*, 280 Ga. App. 406, 412 (5) (634 SE2d 162) (2006) (holding that undefined term in alleged promise was too vague and indefinite for promissory estoppel to apply).

of a memorandum to the Bank's Loan committee (dated November 9, 2007), and determined at that time that the "loan was going into default." Robertson testified that of the $448,000 that he believed the Bank owed to Robertson Grading, approximately $80,000 was the result of work performed after October 10th; however, Robertson did not definitively testify that Robertson Grading would have stopped working if he had been immediately informed of the missed payment, testifying instead that the company "[m]ore than likely" would have stopped. And Robertson himself testified that he thought Hollar "should have notified [him] that there was a problem" in a "timely fashion," which, in his opinion, would have been to "[m]aybe give [R & B] two or three days to make the payment or whatever the Bank terms are." But the evidence established that the Bank, pursuant to its own operating standards and ongoing discussions with R & B, considered the loan in default only after Robertson Grading completed its work, at which point Robertson Grading was notified of the default after it inquired as to why R & B had not paid the final invoice.

Accordingly, for all of the foregoing reasons, we conclude that the trial court erred in failing to grant the Bank's motion for directed verdict as to promissory estoppel.

2. *Negligent Misrepresentation.* As to negligent misrepresentation, the Bank contends that the trial court erred in denying its motion for directed verdict when, *inter alia*, there is no evidence of any damages proximately resulting from the alleged misrepresentation. We agree.

To prevail on a claim of negligent misrepresentation, a party must prove the following essential elements: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance."[27] Robertson Grading contends that the Bank misrepresented the funds remaining in the loan for disbursement, which induced Robertson Grading to enter into the contract to perform services and to continue performing under the contract. However, for the same reasons why any such statement cannot support a claim for promissory estoppel, those same statements cannot support Robertson Grading's claim for negligent misrepresentation.

First, as discussed *supra*, Robertson testified that Robertson Grading had *already contracted* to perform the paving work for R & B *prior* to meeting with the

---

[27] *Hendon Props., LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 439 (2) (620 SE2d 644) (2005) (punctuation omitted).

22

Bank. Second, even assuming that the Bank misrepresented the amount of funds remaining in the loan for disbursement, the undisputed evidence shows that the proximate cause of Robertson Grading's damages was *not* a lack of payment by the Bank due to insufficient funds but was instead R & B's default upon the loan, which Robertson himself admitted would entitle the Bank to discontinue disbursements. Proximate cause is, generally, "a jury issue except in plain, clear, and palpable cases,"[28] and this is such a case. Thus, the trial court erred in denying the Bank's motion for directed verdict as to negligent misrepresentation.[29]

---

[28] *U.S. Fidelity & Guar. Co. v. Paul Assocs., Inc.*, 230 Ga. App. 243, 252 (9) (496 SE2d 283) (1998).

[29] *Cf. Dowdell v. Wilhelm*, 305 Ga. App. 102, 104, 106 (699 SE2d 30) (2010) (reversing denial of motion for summary judgment when intervening criminal act was superseding proximate cause of death, and noting that "[n]ormally, questions of proximate cause are for the jury, but plain and indisputable cases such as this may be decided by the court as a matter of law"). We also note that it is undisputed that the terms of the loan permitted the Bank to demand prompt deposit from R & B of funds "in an amount equal to . . . excess costs." Essentially, the Bank could require R & B to deposit additional money with the Bank to cover items in the budget, but Hollar testified that the Bank had never done this "because we were very comfortable with R & B," which was "in good standing" and "had always performed as agreed." Nevertheless, assuming that R & B had never defaulted upon the loan, it is at least conceivable that the Bank could have demanded the deposit of additional funds to cover any cost overages on Robertson Grading's ultimate invoice.

23

3. *Unjust Enrichment*. The Bank argues that the trial court erred in denying its motion for directed verdict as to unjust enrichment when the Georgia materialman's lien statute provided Robertson Grading's sole remedy and because any "enrichment" cannot be "unjust" because it was received by the Bank through its right to foreclose. Once again we agree.

As noted in Division 1, *supra*, there was no evidence that the Bank entered into an "original undertaking" with Robertson Grading. Consequently, there was no contractual relationship between the Bank and Robertson Grading. And under Georgia law, a materialman or subcontractor may not recover against an owner or general contractor with whom it has no contractual relationship, based on the theory of unjust enrichment or implied contract; "rather, it is limited to the statutory remedies provided by Georgia's lien statute."[30] And there is no obligation arising by operation of law requiring a lender to "protect the subcontractors from the risks of

---

[30] *P. P. G. Indust., Inc. v. Hayes Constr. Co.*, 162 Ga. App. 151, 152 (1) (290 SE2d 347) (1982); *see also Lynn v. Miller Lumber Co.*, 146 Ga. App. 230, 230 (1) (246 SE2d 137) (1978) ("One who has furnished materials pursuant to a relationship with a contractor but who has no contractual relationship with the owner of realty cannot recover a general judgment against the owner for the material furnished.").

24

doing business with its borrower . . . ."[31] Indeed, given that the lender's primary role is to protect its interest in the secured property, we find no basis for "imposing upon the lender the duties of the owner and general contractor to pay for labor and materials supplied to the project."[32]

As such, Robertson Grading could not pursue a claim of unjust enrichment against the Bank when Robertson Grading had no contractual relationship whatsoever with the Bank. Instead, Robertson Grading maintained a contract with R & B, and Robertson Grading was entitled to seek a remedy via the Georgia materialman's statute (which it did, although unsuccessfully due to *its* failure to perfect that lien). Accordingly, the trial court erred in denying the Bank's motion for directed verdict as to unjust enrichment.

4. Finally, we note that although we have held that the trial court erred in failing to direct a verdict as to each of Robertson Grading's theories of recovery, even if one of the theories of recovery were valid, we would still be required to reverse and

---

[31] *Reid v. Saul*, 146 Ga. App. 264, 265 (246 SE2d 121) (1978); *see also Light v. Equitable Mortg. Res., Inc.*, 191 Ga. App. 816, 817 (2) (383 SE2d 142) (1989); *Beacon Co.. v. Cherokee Fed'l Savings & Loan Ass'n of Canton*, 150 Ga. App. 654, 656 (258 SE2d 304) (1979).

[32] *First Fed'l Savings Bank of Brunswick v. Fretthold*, 195 Ga. App. 482, 485 (394 SE2d 128) (1990).

remand for a new trial because the jury returned its verdict via a general-verdict form (at Robertson Grading's request and over the Bank's objections).[33] Our holdings in Divisions 1 through 3, however, make such a remand unnecessary.

5. In light of our disposition of this case in Divisions 1 through 3, the jury's award of attorney fees to Robertson Grading pursuant to OCGA § 13-6-11 must also be reversed.[34]

*Judgment reversed. Doyle, P. J., and Miller, J., concur.*

---

[33] *See Troncalli v. Jones*, 237 Ga. App. 10, 13 (1) (514 SE2d 478) (1999) ("[Because] the jury found a general verdict for the plaintiff against the defendant, the verdict cannot stand for the reason that this court cannot determine whether the verdict was entered upon a proper basis." (punctuation omitted)); *see also Ford Motor Co. v. Reese*, 300 Ga. App. 82, 87 (1) (b) (684 SE2d 279) (2009).

[34] *See Smith v. Stuckey*, 233 Ga. App. 103, 107 (3) (503 SE2d 284) (1998) ("Since there was no evidence from which a jury could find that the contract was made in bad faith or [had been] breached . . . as a result of some sinister motive, the award of attorney's fees cannot be sustained on the basis of bad faith . . . .").