FINAL COPY
294 Ga. 489

S13A1635.  POLO GOLF AND COUNTRY CLUB HOMEOWNERS'
ASSOCIATION, INC. v. RYMER et al.

S13A1636.  POLO GOLF AND COUNTRY CLUB HOMEOWNERS'
ASSOCIATION, INC v. FORSYTH COUNTY et al.

THOMPSON, Chief Justice.

In this appeal, Polo Golf and Country Club Homeowners' Association,
Inc. ("Polo"), the homeowners association of a subdivision in Forsyth County,
the Rymers, who are homeowners in the subdivision, and Forsyth County itself,
are in contention to determine which party is responsible for repairing the
stormwater facilities in the subdivision.

Polo is a mandatory homeowners association at Polo Fields, a subdivision
in Forsyth County consisting of approximately 1,000 lots. The subdivision was
completed in the mid-1980s. The stormwater facilities lying beneath the lots in
the subdivision were not expressly dedicated to the county; and the county
disclaimed ownership of any stormwater facility that does not lie under the
county's streets. Polo does not own any stormwater facilities in the subdivision.

Polo's covenants, which were recorded in 1987, provide that each

homeowner is to maintain and repair the structures on his own property, including any stormwater facilities or device affecting or altering the natural flow of surface waters on any lot. If the covenants are violated by a homeowner, Polo can pursue these remedies: file suit against the homeowner; levy fines against the homeowner; enter the homeowner's lot to make necessary repairs at the homeowner's expense.

The county enacted a stormwater management ordinance in 1996. As amended, the ordinance provides that the Department of Engineering is to "determine the manner in which stormwater facilities should be operated" and "adopt and implement the stormwater management program for the county." The ordinance also provides that the Department of Engineering "shall develop, and update periodically, an addendum to the state stormwater management design manual for the guidance of persons specifically preparing stormwater management reports, and designing or operating stormwater management systems" in the county.

In 2004, the Department of Engineering enacted the addendum contemplated by the ordinance. The section of the addendum at issue in this case, section 4.2.2, requires homeowners associations to take responsibility for

2

stormwater management facilities on their property. It provides:

> When a subdivision . . . has a legally created property or homeowners association, the association will be responsible for maintenance of all drainage easements and all stormwater facilities within the entire development. The association may be required to apply larvicides, stock mosquito fish or take other measures, as required by the Department of Engineering, to protect the health, safety and welfare of the public. The association will have to be formed prior to final plat approval. Any emergency maintenance required by Forsyth County will be done or subcontracted and the charge will be assessed to the association. Forsyth County Department of Engineering, Stormwater Division personnel may perform periodic inspections of existing and new private stormwater management facilities to determine whether they are maintained properly. Deficiencies will be noted to the association in writing. It shall be the responsibility of the association to repair deficiencies in a timely manner.

The Rymers own a house and lot in the Polo Fields subdivision. Because the interior of the Rymers' home was flooded on a number of occasions, the Rymers demanded that Polo and the county take action to fix the stormwater system. Polo responded by notifying the Rymers that it gave notice to the county that "neither the individual homeowner nor [Polo] should be held responsible for the maintenance, repairs and continued upkeep of these easements." Polo also informed the Rymers that it was commissioning a study of the subdivision's stormwater facilities. It was reported that much of the

system was failing because the corrugated metal pipes in the system exceeded their life span of 25 years. Later, Polo informed the Rymers that it would be selecting a contractor to repair the stormwater facilities in the entire subdivision, including the facilities on the Rymers' property, at Polo's expense. However, the repairs were never made, and the Rymers experienced additional flooding. At no point prior to litigation did Polo assert that the Rymers were responsible for repairs to the stormwater facilities on the Rymers' lot.

The Rymers brought suit against Polo[1] and the county. Polo counterclaimed seeking, inter alia, an injunction to compel the Rymers to repair the stormwater facilities under their property pursuant to the covenants. Polo also cross-claimed against the county, asserting, inter alia, the county could not require it to maintain the stormwater facilities because the addendum "applies to new and redevelopments and . . . cannot be applied to [Polo]."

Thereafter, pipes in the vicinity of the Rymers' property failed completely, causing flooding and sinkholes on other lots in the subdivision and additional flooding on the Rymers' property. The county issued a notice to comply and

[1] See OCGA § 44-3-231 (h) (association has power and standing to prosecute or defend in its own name litigation of any kind concerning "lots or common area which association has the responsibility to administer, repair, or maintain").

warning to Polo pursuant to section 4.2.2 of the addendum. In so doing, it directed Polo to make necessary repairs in the subdivision within 30 days. Polo did not make the repairs, and the county issued a notice of violation, but no fines or citations were issued.

Polo filed a separate declaratory judgment action against the county seeking a declaration that the addendum impairs the obligation of contracts and is unconstitutional and invalid. It also sought injunctive relief to prohibit enforcement of the addendum. The Rymers moved to intervene in that case; the motion was granted; and the trial court consolidated the two cases, which involve essentially the same issues. After the parties filed motions and cross-motions for summary judgment, the trial court denied the Rymers' and Polo's summary judgment motions, but granted the county's summary judgment motion, finding the addendum can be enforced against Polo.

1. *The covenants*. Pointing out that the covenants require homeowners in the subdivision to maintain and repair the structures, including stormwater facilities, on their own property, Polo contends the trial court erred in denying its motion for summary judgment vis-a-vis the Rymers. We cannot accept this assertion because, simply put, a genuine issue of material fact remains as to

5

whether Polo is estopped from enforcing the maintenance provision of the covenants against the Rymers.

"In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." Former OCGA § 24-4-27. Promissory estoppel, on the other hand, which only requires "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance[,] is binding if injustice can be avoided only by enforcement of the promise." OCGA § 13-3-44 (a).[2]

Viewing the evidence in a light most favorable to the Rymers, the nonmovant, as we are bound to do, Cowart v. Widener, 287 Ga. 622, 624 (697 SE2d 779) (2010), we find the following:

---

[2] This Code section adopts the Restatement (Second) of Contracts, § 90 and, as the Restatement notes, is often viewed as being promissory estoppel. "Although the Restatement embraces promissory estoppel under the provisions for contracts enforceable without consideration, Georgia views it as a doctrine wherein consideration is supplied by the *reliance* of the promisee on the promise of another." (Emphasis in original.) Folks, Inc. v. Dobbs, 181 Ga. App. 311 (2) (352 SE2d 212) (1986).

When the Rymers brought their flooding problems to the attention of Polo, it took the position that neither the Rymers nor Polo was responsible for the management and upkeep of the stormwater facilities. Instead, Polo asserted responsibility rested with the county. Moreover, Polo notified the Rymers that it was commissioning a study of the stormwater facilities in the subdivision seeking recommendations for repairs, and it assured the Rymers that it would make repairs to the stormwater facilities at its own expense. John Rymer averred that he relied on Polo's promises to make the necessary repairs, that the repairs were never made, and that the Rymers experienced additional flooding. Under these facts, a jury could find that the Rymers reasonably relied upon Polo's promise. See Ambrose v. Sheppard, 241 Ga. App. 835, 837 (528 SE2d 282) (2000) (questions of reasonable reliance are best left to the jury to resolve). Furthermore, a jury could determine there was sufficient consideration to enforce Polo's promise. See Pepsi Cola Bottling Co. v. First Nat. Bank, 248 Ga. 114, 116 (2) (281 SE2d 579) (1981) (within context of promissory estoppel, consideration can be found in "[a]ny benefit accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by, or charge imposed upon, him to whom it is made"). See also Folks, Inc. v. Dobbs, supra.

7

Accordingly, it cannot be said the trial court erred in denying Polo's motion for summary judgment in its dispute with the Rymers.

2. *The addendum.* Polo contends the trial court erred in granting the county's motion for summary judgment and denying its motion for summary judgment because the addendum impairs the obligation of contracts or is otherwise unconstitutional and invalid. We need not decide this issue because, according to its very own terms, the addendum does not apply to Polo. More specifically, the language of the addendum applies only to new developments and redevelopments, not pre-existing developments such as Polo.

Section 1 of the addendum, entitled "Purpose and Applicability," provides:

> The Department of Engineering has adopted the Georgia Stormwater Management Manual (GSMM) as the basis for the design and review of stormwater management facilities and practices in Forsyth County. The purpose of this addendum is to augment and clarify the guidelines set out in the GSMM for the specific management of stormwater runoff within unincorporated Forsyth County, Georgia . . . Chapter 34, Article V Stormwater Management of the Forsyth County Code of Ordinance (the Ordinance) provides the Department with the authority to manage stormwater based on the scope of responsibilities it defines. In summary, persons wishing to develop land in Forsyth County should reference the following documents for guidance: . . .
> Chapter 34, Article V Stormwater Management of the Forsyth

8

County Code of Ordinance provides the legal authority for stormwater management, definitions and a description of the appeal/penalty processes.

Georgia Stormwater Management Manual (GSMM) . . . for guidance on implementing stormwater management requirements during development. . . .

Forsyth County Addendum (this document) to the GSMM provides county-specific clarification and is organized into the following sections:

Section 1: Purpose and Applicability — provides guidance on the application and exemption of these regulations to new development and redevelopment projects.

Section 2: Stormwater Conveyance (Drain Pipe) Design . . .

Section 3: Stormwater Detention Facilities and Practices . . .

Section 4: Stormwater Plan Review Process and Requirements — delineates the process for the design and review of stormwater management facilities for new and redevelopments, including the pre- and post-construction requirements necessary to obtain development permits.

Section 5: Supplemental Stormwater Documents . . .

Section 1.1 "Applicability" reads:

All land development activities in Forsyth County . . . shall be governed by [the ordinance]. Land development activities meeting any of the following criteria will be required to comply with the stormwater management standards of the [ordinance, GSMM and addendum]:

1. new development that involves the creation of 5,000 square feet or more of impervious cover, or that involves other land development activities disturbing (one) 1 acre or more;

2. redevelopment that includes the creation or addition of 5,000 square feet or more of impervious cover, or that involves other land development activity disturbing one (1) acre or more;

3. those developments that regardless of size are defined to be a hotspot land use by the Ordinance, or

4. those developments that construct improvements in phases and that meet criterion No. 1 above when considering the cumulative runoff increase due to all phases.

When one of these conditions is met, the development shall be governed by the stormwater design specifications in the GSMM and Section 3 of this addendum.

Section 4 of the addendum, entitled "Stormwater Management Review Requirements" states:

This section provides guidance on the process for the design and review of stormwater management facilities for new and redevelopments in Forsyth County, including the pre- and post-construction requirements necessary to obtain development permits.

As can be seen, the addendum is replete with statements demonstrating it is to be applied to projects which come into being after its adoption. Section 1 of the addendum, the "applicability" section, states that the addendum is applicable to "new developments" and "redevelopments." This point is emphasized in section 1.1 where the addendum specifies that the addendum is to be applied to new developments and redevelopments with 5,000 square feet or more of impervious cover. Again, in section 4, the addendum speaks of its applicability to "new developments" and "redevelopment." And in section 4.2.2, we also find language looking to the future — i.e., "the association will have to be formed prior to final plat approval" — that is consistent with a

10

prospective application of the addendum. The only phrase in the entire addendum which arguably implies a retroactive application to existing developments is also found in section 4.2.2: "Stormwater Division personnel may perform periodic inspections of existing and new private stormwater management facilities to determine whether they are maintained properly." However, upon close inspection, it is clear that, in context, the word "existing" describes "stormwater management facilities," not subdivisions. In other words, section 4.2.2 can be applied to "new private stormwater management facilities" or "existing" stormwater management facilities in a "redevelopment." But it is not to be applied to a pre-existing subdivision.[3]

Polo was developed nearly twenty years before the addendum was adopted. It is not a "new development" or "redevelopment." Accordingly, it is not subject to section 4.2.2 of the addendum. See generally McNeal Constr. Co. v. Wilson, 271 Ga. 540, 541 (522 SE2d 222) (1999) ("legislative intent must be clear before a statute is applied retroactively"). It follows that the trial court

---

[3] At oral argument, counsel for the county was asked to square the forward looking language of the addendum with the county's assertion that the addendum applied to Polo. We do not find counsel's response – the addendum does not contain language of limitation – persuasive.

erred in granting the county's motion for summary judgment and denying Polo's motion for summary judgment vis-a-vis the county.

Judgment affirmed in Case No. S13A1635. Judgment reversed in Case No. S13A1636. All the Justices concur.

_____

Decided January 21, 2014 – Reconsideration denied February 24, 2014.

Covenants. Forsyth Superior Court. Before Judge Bagley.

Lueder, Larkin & Hunter, John T. Lueder, for appellant.

Temple, Strickland, Dinges & Schwartz, William A. Dinges, Teague & Chambless, James S. Teague, Jr., Keisha M. Chambless, Jarrard & Davis, Kenneth E. Jarrard, Paul B. Frickey, Paul J. Dzikowski, for appellees.