In the Supreme Court of Georgia

Decided: February 15, 2021

S20A1205. POLO GOLF AND COUNTRY CLUB HOMEOWNERS ASSOCIATION, INC. v. JOHN CUNARD et al.

WARREN, Justice.

The heart of this case is a dispute between the Polo Golf and Country Club Homeowners' Association (the "HOA") and Forsyth County over the validity of Section 4.2.2 of Forsyth County's Addendum to the Georgia Stormwater Management Manual, an ordinance that makes HOAs "responsible for maintenance of all drainage easements and all stormwater facilities within the entire development." Section 4.2.2 of the Forsyth County Addendum to the Georgia Stormwater Management Manual ("Section 4.2.2" of the "Addendum").[1] The HOA argues that Section 4.2.2 is

---

[1] The Addendum was initially promulgated by the County's Department of Engineering, but its enabling ordinance incorporates the provisions of the Addendum into the ordinance by reference. See Forsyth County Ordinance

unconstitutional and otherwise invalid and that individual lot owners are responsible for maintaining stormwater infrastructure on their lots. Variants of this case have been litigated and appealed multiple times in this and other Georgia courts, including a 2019 appeal in this Court. See *Polo Golf and Country Club Homeowners Assn., Inc. v. Cunard,* 306 Ga. 788 (833 SE2d 505) (2019) (*Polo Golf II*).[2]

On remand from our *Polo Golf II* decision, the trial court evaluated and rejected the HOA's remaining claims that Section 4.2.2 is invalid because it requires the HOA to trespass on the

No. 75, § 34-184 (c) ("The provisions of the GSMM and the Forsyth County Addendum are incorporated by reference as a part of this Ordinance as fully and completely as if set forth verbatim herein.").

[2] *Polo Golf I*, discussed more below, refers to *Polo Golf and Country Club Homeowners' Assn., Inc. v. Rymer*, 294 Ga. 489 (754 SE2d 42) (2014), which involved a dispute between the HOA, Forsyth County, and lot owners within the Polo Golf development over responsibility for a sinkhole on the lot owners' property. In *Polo Golf I*, we held that an earlier version of Section 4.2.2, which applied only to a "new development" or "redevelopment," did not apply to Polo Golf and Country Club, which was developed before the County adopted the Addendum. See *Polo Golf I*, 294 Ga. at 494-495. On remand, the trial court granted the HOA's motion for summary judgment as to all of the lot owners' claims against the HOA. The Court of Appeals affirmed the judgment in part and reversed in part in *Rymer v. Polo Golf and Country Club Homeowners Assn., Inc.*, 335 Ga. App. 167 (780 SE2d 95) (2015). As explained below, the Addendum was revised in 2014.

2

private property of homeowners, constitutes involuntary servitude under the United States and Georgia Constitutions, and exceeds the scope of the ordinance that authorizes Forsyth County to promulgate the Addendum. The trial court thus denied the HOA's motion for summary judgment and granted the defendants' cross-motion for summary judgment. The HOA appealed, and we now affirm.

1. *Background.*

(a) *Litigation History*

In *Polo Golf II*, we summarized the following background facts:

[The HOA] is a nonprofit corporation which oversees a housing subdivision in unincorporated Forsyth County called "the Polo Fields."[3] The stormwater mechanisms in the subdivision including the Wellington Dam, which shores up a body of water known as the Wellington Lake, are failing due to age. The failure of these various stormwater mechanisms has caused flooding, sinkholes, and other property damage for some individual homeowners. This situation has resulted in almost a decade's worth of litigation, including a previous decision in this Court concerning similar underlying facts and some of the same parties. See *Polo Golf and Country Club Homeowners' Assoc., Inc. v. Rymer*, 294 Ga. 489 (754 SE2d

---

[3] At some point before 1995, the neighborhood became known as Polo Golf and Country Club.

42) (2014) ("*Polo Golf I*"). In *Polo Golf I*, John and Diane Rymer, who were individual homeowners of the Polo Fields, [the HOA], and Forsyth County disagreed as to who was responsible for repairing failing stormwater mechanisms affecting the Rymers' property pursuant to the 2004 version of Section 4.2.2 set forth in Forsyth County's Addendum to the Georgia Stormwater Management Design Manual. . . .[4]

In *Polo Golf I*, [the HOA] contended the 2004 version of Section 4.2.2 was unconstitutional; however, this Court did not reach the constitutional issue in *Polo Golf I* because we concluded that the provision applied to new developments and redevelopments, but not to already-existing developments such as the Polo Fields. 294 Ga. at 495.

In January 2014, while this Court's decision in *Polo Golf I* was still pending, Forsyth County enacted a new version of Section 4.2.2 which now states in pertinent part as follows:

> "When any subdivision or industrial/commercial park, **whether new or existing**, has a legally created property or homeowners association, the association will be responsible for maintenance of all drainage easements and all stormwater facilities within the entire development." (Emphasis supplied).

---

[4] The 2004 version of Section 4.2.2 stated:
When a subdivision or industrial/commercial park has a legally created property or homeowners association, the association will be responsible for maintenance of all drainage easements and all stormwater facilities within the entire development. . . .

*Polo Golf II*, 306 Ga. at 789-790 (footnotes omitted). With

respect to Section 4.2.2, we concluded that

> The 2014 version of Section 4.2.2 states that homeowner associations ("HOAs") are responsible for maintaining all drainage easements and stormwater facilities in their developments. The 2014 version of Section 4.2.2 further provides that the county, in certain circumstances, may direct HOAs to take certain actions (e.g., applying larvicides or making repairs) to comply with their overall responsibility to maintain such systems or otherwise be penalized for noncompliance.

Id. at 792.

With respect to the repairs at issue here, the following facts are

also relevant. In August 2017, the HOA's board sent a letter to the

owners of lots at or abutting Wellington Dam and Lake informing

them that the dam was leaking and "could potentially have a

complete failure."[5] Claiming that Polo Golf's Declaration of

Covenants, Restrictions and Easements (the "Declaration") "does

not place any obligation upon the [HOA] to maintain or repair the

dam," the HOA contended that the lot owners were obligated to

---

[5] The record shows that the HOA does not own any of the Wellington Dam/Lake lots.

maintain and repair all "structures" on their lots under Section 6.14 of the Declaration and that they were obligated to pay the reasonable expenses necessary to maintain the structural integrity of the dam under Section 6.17 (d). The HOA therefore argued that the lot owners were obligated to pay for repair of the dam. But it also gave the lot owners formal notice that "if the dam is not repaired within thirty days, then the [HOA] may exercise the right of abatement."

The lot owners disagreed with the HOA's characterizations of their obligations under the Declaration and disputed that they were obligated to repair the failing Dam. Then, in November 2017, the HOA sent a letter to the lot owners disavowing any involvement with the repairs and "fully revok[ing]" the portion of its earlier letter notifying lot owners that it might exercise its right of abatement, while also noting that the HOA could in the future "consider the remedies available to [it], including the right of abatement."

The HOA ultimately sued John Cunard, Director of Forsyth County's Department of Engineering, and Benny Dempsey,

6

Stormwater Division Manager of Forsyth County's Department of Engineering, to prevent prospective enforcement of Section 4.2.2. The trial court granted the defendants' motion for judgment on the pleadings in part because it concluded that sovereign immunity barred the HOA's suit against the county officials. It also rejected the HOA's arguments that Section 4.2.2 violated the Contracts Clause of the U.S. Constitution and the Georgia Constitution's prohibition against retroactive laws. In *Polo Golf II*, we reversed the trial court's determination that sovereign immunity barred the suit against county officials, affirmed the trial court's grant of the defendants' motion for judgment on the pleadings as to the HOA's arguments on the merits, and remanded the case so the trial court could resolve the HOA's remaining contentions about Section 4.2.2's validity.[6]

---

[6] Specifically, we considered and rejected the HOA's challenge under the Contracts Clause of the U.S. Constitution because, even if the County enforced Section 4.2.2 against the HOA, enforcement would not actually prohibit the HOA from exercising the contractual remedies the Declaration provided. *Polo Golf II*, 306 Ga. at 792-793. Similarly, we rejected the HOA's claim that Section 4.2.2 violates the Georgia Constitution's prohibition against retroactive laws,

7

As part of our remand in *Polo Golf II*, we instructed the trial court to address the HOA's remaining arguments that Section 4.2.2 is invalid because, among other things, it (1) requires the HOA to commit an illegal trespass and (2) constitutes involuntary servitude. On remand, the HOA asserted an additional argument that had been raised in earlier briefing: that Section 4.2.2 is invalid because it exceeds the scope of the authority provided in its enabling ordinance. Resolving these issues against the HOA, the trial court denied the HOA's motion for summary judgment in its entirety and granted defendants' cross-motion for summary judgment.[7]

(b)   *Relevant Sources of Authority*

In Forsyth County, maintenance obligations for stormwater management systems are set forth, in part, in a county-specific addendum to the Georgia Stormwater Management Manual.   The

---

see Ga. Const. of 1983, Art. I, Sec. I, Par. X, reasoning that the HOA failed to demonstrate an injury to a vested right.  See *Polo Golf II*, 306 Ga. at 794.

[7] In ruling on the dispositive motions, the trial court converted the defendants' then-pending motion for judgment on the pleadings into a motion for summary judgment.

County enacted its Addendum under the authority of Forsyth County Ordinance No. 75 (the "enabling ordinance"), which provides:

> The department of engineering shall develop, and update periodically, an Addendum to the state stormwater management design manual for the guidance of persons specifically preparing stormwater management reports, and designing or operating stormwater management systems in Forsyth County.

Ordinance No. 75, Section 34-185 (e).

In turn, Section 4.2.2 of the Addendum, which Forsyth County revised in 2014, provides:

> When any subdivision or industrial/commercial park, whether new or existing, has a legally created property or homeowners association, the association will be responsible for maintenance of all drainage easements and all stormwater facilities within the entire development.

Polo Golf's Declaration also includes covenants pertaining to maintenance and property upkeep for its development. The Declaration provides that "[e]ach Owner shall keep and maintain each Lot and Structure owned by him . . . in good condition and repair" and defines a "structure" as, among other things, "any thing

9

or object that placement of which upon any Lot may affect the appearance of such Lot" including any "temporary or permanent improvement to such Lot."  Declaration, §§ 6.14, 1.12 (a). "Structure" is also defined as:

> any excavation, grading, fill, ditch, *diversion dam or other thing or device which affects or alters the natural flow of surface waters from,* upon or across any Lot, or which affects or alters the flow of any waters in any natural or artificial creek, stream, wash or drainage channel from, upon or across any Lot.

Id. at 1.12 (b) (emphasis supplied).[8]

The Declaration also contains covenants setting forth maintenance obligations related to Wellington Dam and Lake:

> Owners of Lots which abut any such lake *agree to pay any reasonable expenses necessary to maintain the structural integrity of the Dam* and such other maintenance to the lake as may be agreed upon by the majority of the abutting Lot Owners.

Declaration, § 6.17 (d) (emphasis supplied).

---

[8] In *Polo Golf I*, we noted that "Polo's covenants . . . provide that each homeowner is to maintain and repair the structures on his own property, including any stormwater facilities or device affecting or altering the natural flow of surface waters on any lot." See *Polo Golf I*, 294 Ga. at 489.

The Declaration authorizes the HOA to implement several enforcement mechanisms if lot owners breach the maintenance covenants set out in the Declaration. Foremost among them is the right of abatement: the HOA's right "to enter at all reasonable times upon any Lot or Structure, as to which a violation, breach or other condition to be remedied exists, and to take the actions specified" in a required notice sent by the HOA to the lot owner. Declaration, § 8.02.[9] To exercise its right of abatement, the following must occur: the Architectural Control Committee—a committee tasked with ensuring that alterations to structures on lots in the neighborhood comply with the Declaration—notifies the HOA board (the "Board") that, in its opinion, an owner has violated the Declaration. See Declaration, § 6.14. If the Board agrees, it must provide written notice to the lot owner. If the lot owner fails to remedy the specified violation within 30 days, the HOA may exercise the right of abatement under the Declaration. Section 8.02 of the Declaration

---

[9] In addition, the HOA may (among other things) seek specific performance in court and secure and enforce liens against a lot whose owner is in violation of the Declaration. See Declaration, §§ 8.03-8.04.

provides that, in the event the HOA exercises its right of abatement, it is not "deemed to have committed a trespass or wrongful act solely by reason of such entry and such actions, provided [they] are carried out in accordance with the provisions of this Section." Under such circumstances, the lot owner is liable for the costs incurred. See id.

2. *Standard of Review.*

"Our review of the grant or denial of a motion for summary judgment is de novo." *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 82 (779 SE2d 334) (2015) (citation and punctuation omitted). As part of our review, "we construe the evidence most favorably towards the nonmoving party." Id. at 82 (citation and punctuation omitted).

3. The HOA argues that the trial court erred when it concluded that Section 4.2.2 "places ultimate maintenance responsibility for all drainage easements and stormwater facilities" within the Polo Golf development on the HOA. Specifically, the HOA contends that the trial court erred by rejecting the HOA's argument that Section 4.2.2 is invalid—both facially and as-applied to the HOA—because it

12

requires homeowners' associations generally, and the HOA specifically, to perform maintenance on land it does not own without granting access rights, and thus to trespass on private property to remedy stormwater violations. We disagree.

To prevail on its facial challenge to Section 4.2.2, the HOA must establish that "no set of circumstances exists under which [Section 4.2.2] would be valid." *Ga. Dept. of Human Svcs. v. Steiner*, 303 Ga. 890, 899 (815 SE2d 883) (2018) (citation and punctuation omitted). Here, however, the trial court determined that the HOA had "power through its declarations to exercise the right of self-help to abate the non-complying drainage easement or stormwater facility existing on an individual lot owner's lot within the subdivision" and therefore rejected the HOA's argument that compliance with Section 4.2.2 is a legal "impossibility."

The trial court's conclusions are supported by the text of both Section 4.2.2 and the Declaration. To begin, nothing in the text of Section 4.2.2 *requires* an HOA to enter private property to perform maintenance. To the contrary, and as we explained in *Polo Golf II*:

13

> On its face . . . Section 4.2.2 does not mention or prescribe the means by which an HOA must meet its responsibility to maintain drainage easements or stormwater facilities. It also does not expressly or implicitly prohibit an HOA from using its contractual relationships with homeowners to effect compliance therewith.

*Polo Golf II*, 306 Ga. at 792-793.  See also id. at 793 (in rejecting the HOA's contracts clause arguments, concluding that the HOA "ha[d] not shown any actual inability to exercise its contractual remedies because of the county's stormwater ordinance").  To that end, the Declaration provides for remedies short of physical intrusion on a lot owner's property, including the HOA seeking specific performance in court and securing and foreclosing on a lien against the lot.  See Declaration, §§ 8.03-8.04.[10]

Moreover, the Declaration expressly provides that, in the event that the HOA exercises its right of abatement, it is *not "deemed to have committed a trespass* or wrongful act solely by reason of such entry and such actions, provided [they] are carried out in accordance

---

[10] Notably, the HOA's counsel conceded in the proceedings below that the Declaration gives the HOA enforcement mechanisms that do not require the HOA or its agents to physically enter a homeowner's lot.

14

with the provisions of this Section." Declaration, § 8.02 (emphasis supplied). Thus, as we concluded in *Polo Golf II*, Section 4.2.2 does not on its face preclude the HOA from using the abatement remedy or any other method of self-help set forth in the Declaration. Nor does Section 4.2.2 require the HOA to trespass. Given that the text of the Declaration states that if the HOA exercises its right of abatement and physically enters a lot to perform maintenance, it is not "deemed to have committed a trespass," there are at least some circumstances under which Section 4.2.2 would be valid. As a result, the HOA's facial challenge fails. See *Bello v. State*, 300 Ga. 682, 686 (797 SE2d 882) (2017) (rejecting an appellant's facial challenge to a statute when counsel conceded at oral argument that the statute might be valid "in some instances").

The HOA also challenges Section 4.2.2 as invalid as applied to the HOA. Specifically, it argues that because the right of abatement is available only *after* the HOA formally determines that a lot owner is in violation of the Declaration, the HOA could find itself in a situation where the HOA determines that a lot owner's stormwater

15

issue does not violate its Declaration, but the County nevertheless concludes that the lot owner violated county ordinances and cites the HOA for the violation under Section 4.2.2.[11]  Under such a scenario, the HOA argues, Section 4.2.2 would force the HOA to trespass on private property to perform maintenance and is therefore invalid as applied to the HOA.  For its part, Appellees argue that the HOA's concern is unfounded because any violation of Section 4.2.2 necessarily violates the Declaration.

We need not answer the speculative question of whether a violation of Section 4.2.2 always violates the Declaration to conclude that the HOA's as-applied challenge fails.  That is because, as mentioned above, neither Section 4.2.2 nor Polo Golf's Declaration require the HOA to physically enter a lot owner's property.  Moreover, the Declaration equips the HOA with enforcement

---

[11] The HOA also offers another version of this argument: that the trial court erred by "not finding that [the HOA] has no authority to enforce county law."  Specifically, it argues that "Appellees cannot require [the] HOA to find a covenant violation and require enforcement on the property of another owner."  We reject this version of the HOA's argument for the same reasons set forth below.

16

mechanisms short of physical intrusion on another's property—such as seeking specific performance and securing a lien against a lot—in addition to the self-help right of abatement, which the Declaration makes clear would not constitute a trespass. See *Polo Golf II*, 306 Ga. at 792-793. To that end, the trial court found that "exercising self-help and entering [a homeowner's] lot [would] not commit a trespass," in part because the HOA "would be acting pursuant to the terms of the declaration that the lot owner subjected herself to when she purchased her lot within the subdivision." We agree.

Not only does the text of the Declaration support the trial court's conclusion that the HOA had a self-help remedy available to it; the record on appeal shows that the HOA in fact initiated its right of abatement here. Indeed, the HOA took a preliminary step towards abatement when it sent a letter to the lot owners whose property abutted Wellington Dam and Lake informing them of the Dam's failing condition, telling them that lot owners were responsible under the Declaration for repairing the structure, and warning them that "if the dam is not repaired within thirty days,

17

then the Association may exercise the right of abatement." Although the HOA later purported to revoke that notice, it reserved its right to abate in the future, thus demonstrating the HOA's ability to comply with Section 4.2.2 without trespassing. The HOA's as-applied challenge to Section 4.2.2 therefore fails.[12] Accordingly, we affirm the trial court's grant of defendants' cross-motion for summary judgment as to the HOA's trespass arguments.

4. The HOA contends that Section 4.2.2 is unconstitutional—facially and as-applied to the HOA—because it compels the HOA to maintain property the HOA does not own, and thus constitutes

---

[12] We likewise reject the HOA's argument that, in enacting Section 4.2.2, the County "hijack[ed]" the HOA's discretion under the Declaration and "substitute[ed] [its] own judgment for the judgment of the ACC and [HOA]," specifically with respect to the right to abatement, thereby violating the "business judgment rule." See generally *Federal Deposit Insurance Corp. v. Loudermilk*, 295 Ga. 579, 580, 584-586 (761 SE2d 332) (2014) (explaining that the business judgment rule typically prevents courts from second-guessing the good-faith, informed decisions of a corporate board). It is not at all clear that the business judgment rule applies here, and the HOA has made no showing that Section 4.2.2 "hijacks" the right of abatement or any other self-help remedy set forth in the Declaration. Unlike in *Rymer v. Polo Golf and Country Club Homeowners Assn., Inc.*, 335 Ga. App. at 174, where a Polo Golf lot owner asked the trial court to find that the HOA breached its duty by not exercising its Declaration remedies against other lot owners, this appeal does not present the question of whether a corporation has exercised its discretion over its own affairs lawfully and in good faith.

involuntary servitude in violation of the United States and Georgia Constitutions. See U.S. Const. Amend. XIII ("Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."); Ga. Const. Art. I, Sec. I, Par. XXII ("There shall be no involuntary servitude within the State of Georgia except as a punishment for crime after legal conviction thereof or for contempt of court."). The trial court held that the obligation imposed by Section 4.2.2 "does not fall within the realm of compulsory labor as contemplated by the Thirteenth Amendment," and we agree.

The Thirteenth Amendment of the United States Constitution and Article I, Section I, Par. XXII of the Georgia Constitution were enacted "[i]n response to this country's past institutional enslavement of people of African descent." *Gasses v. City of Riverdale*, 288 Ga. 75, 78 (701 SE2d 157) (2010).[13]   The United

---

[13] The HOA offers no authority to support its argument that Section 4.2.2 violates Article I, Section I, Par. XXII of the Georgia Constitution. Nor does it

19

States Supreme Court has held that although "[t]he primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War," the Thirteenth Amendment "was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *United States v. Kozminski*, 487 U.S. 931, 942 (108 SCt 2751, 101 LE2d 788) (1988) (citation and punctuation omitted). But "the prohibition against involuntary servitude does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties," including jury service, military service, and roadwork. Id. at 943-944. Likewise, this Court has held that a municipal ordinance requiring citizens to "maintain grass, weeds, and vegetation for the welfare of the community is not constitutionally prohibited involuntary servitude."

---

attempt to distinguish—or compare—the state constitutional provision with its federal counterpart. Accordingly, we decline to separately analyze the HOA's contention under the Georgia Constitution.

*Gasses*, 288 Ga. at 78.

The HOA contends that a key distinction between Section 4.2.2 and the type of ordinance at issue in *Gasses* is that Section 4.2.2 requires the HOA to perform work on property owned by an individual lot owner, as opposed to property owned by the HOA. It thus argues that compelled labor on *another's* property constitutes involuntary servitude.

We have no trouble concluding that the HOA has not established a Thirteenth Amendment violation here. That is because the record belies the HOA's characterization of its Section 4.2.2 obligations. As the trial court noted, "the HOA is not a stranger to the privately-owned properties which comprise the subdivision." The Declaration plainly states that the HOA is a "non-profit civic organization [existing] for the *sole purpose of performing certain functions for the common good and general welfare of the people of the Development*," Declaration, § 3.01 (emphasis supplied), and both the HOA and the individual lot owners consented to the various obligations and covenants set forth in the Declaration.

21

Moreover, as explained above, the HOA has specific authority under certain circumstances (such as with the right of abatement) to enter a lot owner's property and perform maintenance. Because the maintenance obligations imposed by Section 4.2.2 do not constitute involuntary servitude under the Thirteenth Amendment to the United States Constitution, we affirm the trial court's grant of summary judgment to defendants with respect to the HOA's involuntary servitude arguments.[14]

5. Finally, citing *Department of Human Resources v. Anderson*, 218 Ga. App. 528, 529 (462 SE2d 439) (1995),[15] the HOA contends that Section 4.2.2 is invalid because it is an administrative rule that

---

[14] We emphasize that we resolve the HOA's as-applied challenges based on the record on appeal in this case, and in large part on the text of the various covenants and other agreements set forth in Polo Golf's Declaration. We express no opinion about how similar as-applied challenges would fare under a different set of contractual agreements.

[15] In *Anderson*, the Court of Appeals held invalid a Department of Human Resources regulation involving the process for modifying court-ordered child support because the regulation exceeded the authority provided to the Department of Human Resources in OCGA § 19-11-12. See *Anderson*, 218 Ga. App. at 528-529.

"exceeds the scope of or is inconsistent with the authority of the statute upon which it is predicated." Id. Specifically, the HOA argues that Section 4.2.2 is "facially invalid" because it exceeds the scope of the authorization provided in Forsyth County Ordinance No. 75.[16]

Section 34-185 (e) of Ordinance No. 75 provides:

The [county] Department of Engineering shall develop, and update periodically, an Addendum to the state stormwater management design manual for the guidance of persons specifically preparing stormwater management reports, and designing or operating stormwater management systems in Forsyth County.

The HOA argues that when the Addendum was revised in 2014, the lot owners—and not the HOA—operated the stormwater management system in the Polo Golf subdivision, and because the HOA did not "prepare stormwater reports" or "design[] or operat[e] stormwater management systems in Forsyth County" at that time, "the government improperly used Section 4.2.2 to create a brand

---

[16] We interpret the HOA's argument that the 2014 version of Section 4.2.2 is "facially invalid" as an argument that Section 4.2.2 is invalid because its promulgation was unauthorized.

23

new obligation onto [the] HOA to *become* an operator of a stormwater system." (Emphasis in original.) In short, the HOA argues that because it did not "operat[e] stormwater management systems" in 2014, as referenced in Ordinance No. 75, Section 4.2.2 could not lawfully apply to the HOA and therefore "exceeds its enabling ordinance."

The trial court rejected this argument and determined that the HOA "is an operator of a stormwater management system within the subdivision it was created to protect." And although the trial court offered no reasoning to support this conclusion, we cannot say that it erred when it concluded that the HOA "falls within the scope of persons or entities to which [Section 4.2.2] applies." That is because the HOA's argument—though characterized as Section 4.2.2 being invalid because it is inconsistent with its enabling ordinance—is really another species of the Contracts Clause and retroactivity arguments the HOA offered, and we rejected, in *Polo Golf II*. Indeed, in *Polo Golf II*, the HOA disputed that Section 4.2.2 "makes [the HOA] responsible for the maintenance of all stormwater

24

mechanisms within the subdivision." *Polo Golf II*, 306 Ga. at 790. We rejected that challenge, explaining that "[t]he 2014 version of Section 4.2.2 states that homeowners associations ('HOAs') are responsible for maintaining all drainage easements and stormwater facilities in their developments" and rejecting the HOA's argument that Section 4.2.2 impaired its contractual relationship with lot owners by precluding the HOA from enforcing individual lot owners' maintenance obligations under the Declaration. Id. at 792-793. We similarly rejected the HOA's argument that applying Section 4.2.2 to the HOA violated Georgia's constitutional prohibition against retroactive laws. Id. at 793-794. In so doing, we held that the HOA had "failed to fully articulate a vested right or show that any alleged vested right has been injuriously affected by the 2014 version of Section 4.2.2." Id. at 794. In other words, we held that the HOA had not demonstrated that it had a vested right in the lot-owner-maintenance obligations set forth in the pre-2014 Declaration, or that, at the very least, Section 4.2.2 had not substantially interfered with any right the HOA had. See id.

The HOA's argument in this appeal is fundamentally the same: notwithstanding this Court's holding that Section 4.2.2 applies to the HOA and was not unconstitutionally retroactive, the HOA objects "to the County making [the HOA] an operator of the stormwater system within the Polo Fields subdivision when the County's own law [in 2014], as well as the Declaration, put the stormwater maintenance on individual lot owners rather than on [the] HOA." As explained in *Polo Golf II*, however, and as recounted above, we have already rejected the merits of that argument. Accordingly, we again reject the HOA's argument that Section 4.2.2 is invalid and affirm the trial court's conclusion that the HOA "falls within the scope of persons or entities to which the addendum applies."

*Judgment affirmed. All the Justices concur, except McMillian, J., who concurs specially in Division 5.*

26

S20A1552. POLO GOLF AND COUNTRY CLUB HOMEOWNERS ASSOCIATION, INC. v. CUNARD, et al.

MCMILLIAN, Justice, concurring specially.

I concur fully in the judgment and in the majority opinion except for its Division 5, in which I concur in judgment only. Although I agree with the majority's conclusion that Section 4.2.2 is not invalid on the ground that it exceeds the authority granted by Ordinance No. 75, I reach this conclusion based on a plain reading of the text of Ordinance No. 75 itself without regard to prior holdings of this Court.

> In interpreting county ordinances,
>
> we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Cowen v. Clayton County*, 306 Ga. 698, 702 (2) (a) (832 SE2d 819) (2019) (citations omitted). See also *Sliney v. State*, 260 Ga. 167 (391 SE2d 114) (1990) (applying rules of statutory construction to county ordinance). Section 35-183 (6) of Ordinance No. 75 provides that one

27

of the stated purposes of the ordinance is to

> [e]stablish provisions for the *long-term* responsibility for and maintenance of structural stormwater control facilities and nonstructural stormwater management practices to ensure they continue to function as designed, are maintained, and pose no threat to public safety.

(Emphasis supplied.) Section 34-185 of Ordinance No. 75 outlines the scope of responsibility invested in the County's Department of Engineering. Subsection (b) of that section places responsibility on the Director of the Engineering Department or his or her designee for the coordination and enforcement of the Ordinance's provision, and Section 34-185 (e), pursuant to which Section 4.2.2. was drafted, provides:

> The Department of Engineering shall develop, and update periodically, an Addendum to the state stormwater management design manual for the guidance of persons specifically preparing stormwater management reports, and designing or operating stormwater management systems in Forsyth County.

This language is couched in the present tense and thus requires the department to provide guidance to all persons currently operating *any* stormwater systems in Forsyth

28

County. The next section of Ordinance No. 75, Section 34-186, outlines the powers granted to the Department of Engineering, and subsection (b) (2) expressly allows the department to "[d]etermine the manner in which stormwater facilities should be operated." That grant of power necessarily includes the authority to determine who should be charged with responsibility for operating such facilities, including the maintenance of such facilities, in order to maintain public safety. Although this Court interpreted the 2004 version of Section 4.2.2 of the Addendum as imposing responsibility on HOAs "for maintenance of all drainage easements and all stormwater facilities within the entire development" only as to new developments and redevelopments, *Polo Golf and Country Club Homeowners' Assn., Inc. v. Rymer*, 294 Ga. 489, 495 (2) (754 SE2d 42) (2014) (*Polo Golf I*),[17] the text of Ordinance No.

---

[17] This Court based its conclusion on the "Purpose and Applicability" section of the 2004 version of the Addendum, which addressed only new developments and redevelopments. See *Polo Golf I*, 294 Ga. at 492-95 (2). However, Section 1.1 of the 2014 version of the Addendum, which addresses

75 authorized the Department to extend the responsibility of homeowners' associations to operate stormwater management systems in subdivisions or industrial/commercial parks "whether new or existing," as it did in the 2014 version of the Addendum. While this Court's prior rulings with regard to the Contract Clause and retroactive laws provide somewhat analogous support to this interpretation of the plain language of Ordinance No. 75, I do not believe, as the majority concludes, that those holdings are determinative of the HOA's argument with regard to the authority supporting Section 4.2.2. Thus, I would reject the HOA's argument that Section 4.2.2 is "facially invalid" based on the plain language of Ordinance No. 75, which authorizes the department to amend Section 4.2.2 to make the HOA responsible for the maintenance of stormwater systems within the subdivision.

---

"Applicability," expressly provides that "[e]xisting, new and planned stormwater facilities shall comply with the maintenance requirements of Section 4 of this addendum," which includes Section 4.2.2.

30